## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| TERRENCE JOHNSON, JIM HARRIS, | ) | |
| ALEXANDER FRIEDMANN, and | ) | |
| JOSHUA ROBERTS | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 03-08-0187 |
| | ) | The Honorable Thomas |
| PHIL BREDESEN, Governor of the State | ) | A. Wiseman, Jr., Presiding. |
| of Tennessee, BROOK THOMPSON, | ) | |
| Coordinator of Elections, RILEY | ) | |
| DARNELL, Secretary of State of | ) | |
| Tennessee, JAMES JOHNSON, | ) | |
| Administrator of Elections for Shelby | ) | |
| County, KIM BUCKLEY, Administrator | ) | |
| of Elections for Madison County, and | ) | |
| RAY BARRETT, Administrator of | ) | |
| Elections for Davidson County, in their | ) | |
| official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

---

## MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS AS TO THE CONSITUTIONAL CHALLENGES CONTAINED IN THE AMENDED COMPLAINT, BY PHIL BREDESEN, BROOK THOMPSON, AND RILEY DARNELL

---

Pursuant to Fed. R. Civ. P. 12(c), Phil Bredesen, Brook Thompson, and Riley

Darnell (collectively, "State Defendants"), hereby file this Memorandum in Support of

their Motion for Judgment on the Pleadings as to the Constitutional Challenges Contained

in the Amended Complaint. State Defendants assert that, even accepting all of Plaintiffs'

allegations as true, as a matter of law, Plaintiffs are not entitled to any relief.

### PROCEDURAL HISTORY

While atypical for a motion for judgment on the pleadings, State Defendants would like to make the Court aware of the procedural history that led to the filing of this motion.

Plaintiffs originally filed this action on February 25, 2008. On April 11, 2008, after the first Case Management Conference, Magistrate Griffin ordered the parties to reconvene on July 25, 2008. The purpose of that second conference was to give Plaintiffs time to determine whether or not they intended to employ an expert in this case and, based on that decision, set an appropriate trial date.[1]

During that second Case Management Conference, State Defendants voiced their desire to file this motion as quickly as possible, in hopes of resolving the threshold constitutional questions in advance of October 4, 2008, the last day to register to vote in the November election.

With the cooperation of all of the parties, Magistrate Griffin set an expedited motion schedule. The State Defendants agreed to file this Motion by August 1, 2008; Plaintiffs agreed to file their response or a cross motion by August 22, 2008; State Defendants agreed to file a reply, if necessary, by August 25, 2008; and, if a cross motion was filed, the County Defendants agreed to respond to that motion by September 5, 2008.

## CLAIMS AT ISSUE IN THIS MOTION

On July 17, 2008, Plaintiffs filed the Amended Complaint for Declaratory Relief, Injunctive Relief, and Nominal Monetary Damages (the "Complaint").

---

[1] In the interim time, some discovery was completed, and this Court ruled on the County Defendants' motions to dismiss.

2

The Complaint arises from the operation of Tenn. Code. Ann. §§ 40-29-202(b) and (c).[2] These two statutes relate to Tenn. Code Ann. § 40-29-202(a), which provides that a citizen convicted of a felony and deprived of the right to vote can apply for a voter registration card and seek to regain the elective franchise upon: receiving a pardon without any special conditions relating to suffrage; release from custody by reason of service or expiration of the maximum sentence imposed by the court; or being granted final discharge from supervision by the board of probation and parole, or an equivalent discharge by another state, the federal government, or a county correction authority.

Tenn. Code. Ann. § 40-29-202(b) states,

> [n]otwithstanding the provisions of subsection (a), a person shall not be eligible to apply for a voter registration card and have the right of suffrage restored, unless that person has paid all restitution to the victim or victims of the offense ordered by the court as part of the sentence.

Tenn. Code. Ann. §§ 40-29-202(c) states,

> [n]otwithstanding the provisions of subsection (a), a person shall not be eligible to apply for a voter registration card and have the right of suffrage restored, unless the person is current in all child support obligations.

The Complaint alleges five constitutional violations[3] in relation to these two statutes, enumerated below:

1.  Tenn. Code. Ann. § 40-29-202(b) violates the Equal Protection Clause of the United States Constitution;

2.  Tenn. Code. Ann. § 40-29-202(c) violates the Equal Protection Clause of the United States Constitution;

---

[2]Amended Complaint at 1.
[3] There are six counts in the Complaint. The sixth count alleges a due process violation in relation to Plaintiff Friedmann specifically. This count is not a facial challenge to the requirements set forth in the challenged statutes and is not at issue in this Motion.

3

3.  the two statues violate the Twenty-Fourth Amendment to the United States Constitution;

4.  application of the two statutes to Plaintiffs violates the Ex Post Facto Clauses of the United States and Tennessee Constitutions; and

5.  the two statutes violate the Privilege and Immunities Clauses of the United States and Tennessee Constitutions .[4]

## SUMMARY OF ARGUMENT

First, Tenn. Code. Ann. §§ 40-29-202(b) and (c), (collectively, the "Statutes"), do not violate the Equal Protection Clause of the United States Constitution.  Felons do not have a fundamental right to vote[5] and wealth qualifications do not discriminate against a suspect class.[6]  As a result, the requirements contained in the Statutes are only subject to a rational basis analysis.  The State has a legitimate interest in protecting the ballot box from felons who choose to continue to violate the laws of this State by not paying restitution to the victims of their crimes and not supporting their children by refusing to pay their court-ordered child support obligations.

Second, the Statutes do not violate the Twenty-Fourth Amendment to the United States Constitution (prohibiting requiring the payment of a poll or other tax prior to voting) because child support obligations and victim's restitution obligations are not

---

[4] Amended Complaint at 7-11.
[5] *See Richardson v. Ramirez*, 418 U.S. 24, 54, 94 S.Ct. 2655, 2671, 41 L.Ed.2d 551 (1974) (holding that denying convicted felons the right to vote did not violate the equal protection clause); *Wesley v. Collins*, 791 F.2d 1255, 1261 (6th Cir. 1986) (holding that convicted felons do not have a fundamental right to vote); *Owens v. Barnes*, 711 F.2d 25, 27 (3rd Cir. 1983), *cert. denied*, 464 U.S. 963, 104 S.Ct. 400, 78 L.Ed.2d 341(1983) (upholding a Pennsylvania statute barring incarcerated felons from voting but allowing unincarcerated felons to vote); *Shepherd v. Trevino*, 575 F.2d 1110, 1114 (5th Cir. 1978), *cert. denied*, 439 U.S. 1129, 99 S.Ct. 1047. 59 L.Ed.2d 90 (1979) (upholding a Texas statute granting re-enfranchisement to felons convicted in state court who successfully completed parole provisions while not granting re-enfranchisement to similarly situated felons convicted in federal court).
[6] *See Papasan v. Allain*, 478 U.S. 265, 283-84, 106 S.Ct. 2932, 2943, 92 L.Ed.2d 209 (1986) (holding that wealth classification in relation to educational spending was not subject to heightened scrutiny).

taxes.[7]  In addition, even if they could be considered taxes, they are not taxes paid by otherwise qualified individuals prior to being allowed to exercise the pre-existing right to vote; rather, they are taxes imposed on the ability to qualify to regain the right to vote. Thus, the Statutes fall outside of the purview of the Twenty-Fourth Amendment.

Third, the Statutes are civil statutes related to a civil regulatory scheme, and therefore not capable of violating the Ex Post Facto Clauses of either the United States or Tennessee Constitutions.[8]  In addition, the Statutes do not alter the definition of the crimes Plaintiffs committed or increase the punishment for those crimes.

Fourth, because felons do not have the right to vote, regulation of the elective franchise in relation to felons cannot violate the Privileges and Immunities Clause.[9]

## STANDARD OF REVIEW

"For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir.1973).  But we "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir.1999). A Rule 12(c) motion "is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir.1991).[10]

## ARGUMENT

## I.     Background

---

[7] *See* n. 36 and 37, *infra*.
[8] *See* Section IV, A, *infra*.
[9] *See* Section V, *infra*.
[10] *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581-82 (6th Cir. 2007).

Since the ratification of the United States Constitution, four Amendments have been added that limit the power of the states to set the qualifications of voters.[11] In addition to these Amendments, the Voting Rights Act of 1965 also provides several limitations on the power of the states to distribute the voting franchise.[12]

While these limitations act as a check on the power of the states, they stop short of usurping the states' power to set the qualifications. Evidence of this constraint can be found in the text of the Amendments and the Voting Rights Act. Each of the Amendments forbids the denial or abridgement of the right to vote "by the United States *or by any State*" when speaking to the power to set qualifications for the voting franchise.[13] The Voting Rights Act also speaks in terms of limiting the power of the states.[14] While limiting the criteria a State may use in denying the right to vote and actually setting the qualifications of voters may produce the same results, that the framers chose one over the other textually demonstrates the desire of the framers to leave the power to set the qualifications of voters to the states.

Given that the United States Constitution only grants the right to vote to qualified citizens and leaves the determination of qualifications to the individual states,

---

[11] *See* U.S. Const. amend. XV (ratified in 1870, forbidding the denial or abridgement of the right to vote on account of race, color, or previous condition of servitude); U.S. Const. amend. XIX (ratified in 1920, forbidding the denial or abridgement of the right to vote on account of sex); U.S. Const. amend. XXIV (ratified in 1964, forbidding the abridgement or denial of the right to vote on account of failure to pay any tax); U.S. Const. amend. XXVI (ratified in 1971, forbidding the denial or abridgement on account of age for citizens eighteen years of age or older).

[12] *See* 42 U.S.C. §§ 1971-73.

[13] *See* U.S. Const. amend. XV; U.S. Const. amend. XIX; U.S. Const. amend. XXIV; U.S. Const. amend. XXVI. (emphasis added).

[14] *See* 42 U.S.C. § 1971(a)(1).

6

constitutional challenges to state statutes setting voting qualifications are initiated primarily pursuant to the Equal Protection Clause of the United State Constitution.[15]

## II.      The Statutes Do Not Violate the Equal Protection Clause.

In *Dunn v. Blumstein*, the United States Supreme Court stated, "[i]n considering laws challenged under the Equal Protection Clause, this Court has evolved more than one test, depending upon the interest affected or the classification involved."[16]

If the interest affected involves a fundamental right or the classification discriminates against a suspect class, then a statute is subject to strict scrutiny, and only a compelling or substantial state interest will save it from being declared unconstitutional.[17] If neither the interest affected implicates a fundamental right nor the classification discriminates against a suspect class, then a statute is subject to a rational basis standard, which only requires a rational or legitimate state interest to be constitutionally sound.[18] Finally, if a statute does not implicate a fundamental right and does not, on its face, discriminate against a suspect class, but the statute does have a disparate impact on a suspect class and was enacted with animus toward that class, then the statute is subject to strict scrutiny.[19]

Thus, the two questions relevant to this opinion are whether the Statutes implicate a fundamental right and whether the Statutes discriminate against a suspect class.

---

[15] *See* U.S. Const. amend. XIV, § 1.  Compare this to the challenges brought pursuant to an affirmatively granted right, such as Free Exercise or Speech challenges brought pursuant to the First Amendment or illegal Search and Seizure challenges brought pursuant to the Fourth Amendment.  While these challenges are often accompanied by an Equal Protection claim, the United States Constitution provides a dedicated vehicle to challenge the conduct pursuant to an affirmative grant of a right.
[16] 405 U.S. 330, 335, 92 S.Ct. 995, 999, 31 L.Ed.2d 274 (1972).
[17] *See Kadrmas v. Dickinson Public Schools*, 487 U.S. 450, 457, 108 S.Ct. 2481, 2487, 101 L.Ed.2d 399 (1988).
[18] *See Romer v. Evans*, 517 U.S. 620, 631, 116 S.Ct. 1620, 1627, 134 L.Ed.2d 855 (1996).
[19] *See Village of Arlington Heights v. Metropolitan Housing Authority*, 429 U.S 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977).

7

**A.** **Because the Statutes do not involve a fundamental right, do not discriminate against a suspect class, and do not disparately impact a suspect class, the rational basis test should be employed in examining them.**

      **i.** **The right to vote is not a fundamental right for felons.**

In ruling on challenges to state-enacted voting qualifications, the United States Supreme Court has held that the right to vote is a fundamental right.[20]  In light of its fundamental nature, the Court has held that any abridgement of the right must serve a substantial or compelling state interest to avoid violating the Equal Protection Clause.[21]

The Supreme Court and several lower courts have declined, however, to subject voting qualifications envisioned by the United States Constitution to any Equal Protection scrutiny.[22]  The most prevalent example of this restraint is in the arena of felon disenfranchisement.[23]  In *Richardson v. Ramirez*, when explaining why felon disenfranchisement did not violate the Equal Protection Clause, the Supreme Court stated,

> [a]s we have seen, however, the exclusion of felons from the vote has an affirmative sanction in s [§] 2 of the Fourteenth Amendment, a sanction which was not present in the case of the other restrictions on the franchise which were invalidated in the cases on which respondents rely. We hold that the understanding of those who adopted the

---

[20] *See Reynolds v. Sims*, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964) (stating, "the right of suffrage is a fundamental matter in a free and democratic society."); *Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886) (holding that the right to vote is a fundamental political right that is preservative of all other rights).

[21] *See Blumstein*, 405 U.S. at 335, 92 S.Ct. at 999 (striking down residency duration requirements); s*ee also Bullock v. Carter*, 405 U.S. 134, 142, 92 S.Ct. 849, 855-56, 31 L.Ed.2d 92 (1972) (striking down a primary filing fee system for candidates); *Kramer v. Union Free School District*, 395 U.S. 621, 626, 89 S.Ct. 1886, 1889, 23 L.Ed.2d 583 (1969) (striking down statute that limits participation in school district elections to those who own property in the district and have children attending public schools); *Cipriano v. City of Houma*, 395 U.S. 701, 704,  89 S.Ct. 1897, 1899, 23 L.Ed.2d 647 (1969) (striking down statute that limited participation in elections to decide bond issues to property taxpayers); *Harper v. Virginia State Board of Elections*, 383 U.S. 663, 670, 86 S.Ct. 1079, 1083, 16 L.Ed.2d 169 (1966) (striking down a poll tax); *Reynolds*, 377 U.S. at 562, 84 S.Ct. at 1381 (striking down apportionment of legislative seats).

[22] *See Richardson v. Ramirez*, 418 U.S. 24, 54, 94 S.Ct. 2655, 2671, 41 L.Ed.2d 551 (1974).

[23] *See id.*

> Fourteenth Amendment, as reflected in the express
> language of s [§] 2 and in the historical and judicial
> interpretation of the Amendment's applicability to state
> laws disenfranchising felons, is of controlling significance
> in distinguishing such laws from those other state
> limitations on the franchise which have been held invalid
> under the Equal Protection Clause by this Court.[24]

In reaching its conclusion, the Court did not subject felon disenfranchisement to any level of scrutiny to determine whether it violated the Equal Protection Clause. Instead, the Court stated,

> we may rest on the demonstrably sound proposition that s
> [§] 1 [the Equal Protection Clause], in dealing with voting
> rights as it does, could not have been meant to bar outright
> a form of disenfranchisement which was expressly
> exempted from the less drastic sanction of reduced
> representation which s [§] 2 imposed for other forms of
> disenfranchisement.[25]

The reasoning in *Ramirez*, read in conjunction with the holding in *Blumstein*, compels the conclusion that, while the right to vote is a fundamental right in the majority of cases arising from the denial of the elective franchise to a group of people, any denial to a group of people that was envisioned by the framers and embodied in the United States Constitution[26] is not subject to any Equal Protection analysis.

The analysis in relation to this case, however, cannot end here. The assertion that voting qualifications embodied in the United States Constitution are not subject to any

---

[24] *Id.* at 54.  The Court, after engaging in  an exhaustive discussion of the legislative history of the Fourteenth Amendment, focused on the following language of § 2 of the Amendment: "But when the right to vote at any election ... is denied to any of the male inhabitants of such State, being twenty-one years of age, and citizens of the United States, or in any way abridged, *except for participation in rebellion, or other crime*, the basis of representation therein shall be reduced in the proportion[.]"  *See Ramirez*, 418 U.S. at 42-43, 94 S.Ct. at 2665.

[25] *Id.*

[26] An example of another such qualification is the age requirement.  That the Twenty-Sixth Amendment to the United States Constitution requires states to allow all otherwise qualified individuals over the age of eighteen to vote is a tacit recognition that states may bar all those under the age of eighteen.  *See* U.S. Const. amend. XXVI.  This does not bar the states from distributing the franchise to individuals less than eighteen years of age; it only means that any decision by the states not to do so would not be subject to any level of  scrutiny under the reasoning in *Ramirez*.  *See Ramirez*, 418 U.S. at 24, 94 S.Ct. at 2655.

9

scrutiny does not relieve a state from any Equal Protection analysis related thereto. The state would only be relieved of showing any state interest in relation to the exclusion of all members of a constitutionally envisioned group (such as all felons or citizens under the age of 18). If, however, the state were to create a class of individuals by excluding some but not all members of an envisioned group, then the state would have to show an interest justifying the different treatment – the level of the state interest, again, would depend upon the classification.

While the United States Supreme Court has not considered the specific question before the Court, many lower courts have. In doing so, those courts have assumed that felon disenfranchisement is constitutional but have applied a rational basis standard in determining whether restoring the right of some but not all felons is permissible.[27]

All of these cases demonstrate one clear rule that is very relevant to this action: felons do not have a fundamental right to vote. The grant of that right to some felons and not others will only be analyzed under a rational basis standard, barring discrimination against a suspect class.

> ii.    **The statute on its face does not discriminate against a suspect class.**

The Statutes burden the ability of felons who are not current in their child support obligations and have not paid their court ordered victims' restitution to participate in the elective franchise. The United States Supreme Court has never found felons who owe child support or victims' restitution to be a suspect class.

---

[27] *See Collins*, 791 F.2d at 1261 (holding that convicted felons do not possess a fundamental right to vote); *Barnes*, 711 F.2d at 27 (upholding a Pennsylvania statute barring incarcerated felons from voting but allowing un-incarcerated felons to vote); *Trevino*, 575 F.2d at 1114 (upholding a Texas statute granting re-enfranchisement to felons convicted in state court who successfully completed parole provisions while not granting re-enfranchisement to similarly situated felons convicted in federal court).

### iii. The indigent are not a suspect class, and there is no proof of animus on the part of the legislature, thus barring a disparate impact claim.

The Equal Protection jurisprudence that has been developed in the federal courts leaves open the possibility of proving a violation of the Equal Protection Clause when a statute, while not discriminating against a suspect class on its face, disproportionately affects a suspect class.[28] To succeed on a disparate-impact claim, however, plaintiffs must plead and prove that the challenged statutes were passed with animus toward that class.[29]

In both Counts 1 and 2 in the Amended Complaint, Plaintiffs appear to assert that the class being discriminated against is the indigent.[30] Assuming for the sake of this motion that the indigent are being discriminated against, they are not a suspect class.[31] While wealth classifications in relation to qualified voters have generally been disfavored, those cases have involved the fundamental right to vote (afforded to non-felons, over the age of 18) and do not need to rely upon the wealth classification to invoke strict scrutiny.[32] Thus, even if the Plaintiffs' allegations that the Statutes discriminate against the indigent, that discrimination is not against a suspect class and, thus, would not raise the level of scrutiny applied to the Statutes.

In addition, Plaintiffs neither plead, nor can they prove, that the Tennessee General Assembly passed the Statutes with animus toward any group.

### B. Under the rational basis test, the Statutes are constitutional.

---

[28] *See Village of Arlington Heights*, 429 U.S at 265, 97 S.Ct. at 563.
[29] *Id.*
[30] Amended Complaint at 7-8.
[31] *See Papasan*, 478 U.S. at 283-84, 106 S.Ct. at 2943 (holding that wealth classification in relation to educational spending was not subject to heightened scrutiny).
[32] *See Virginia State Board of Elections*, 383 U.S. at 668, 86 S.Ct. at 1082 (striking down a Virginia poll tax of $1.50 levied against voters for access to the polls).

As stated above, any Equal Protection analysis is completely dependent upon the nature of the right at issue and whether a suspect class is being denied that right. Given that no fundamental right is implicated here, the Statutes do not facially discriminate against any suspect class, and the Statutes will not have a disparate impact on a suspect class and were not passed with animus toward a suspect class, the State must only demonstrate a rational basis for the classification.[33]

The rational basis test is very deferential to the state.[34] In *F.C.C. v. Beach Communications, Inc.*, the United States Supreme Court stated,

> a statutory classification that neither proceeds along suspect
> lines nor infringes fundamental constitutional rights must
> be upheld against equal protection challenge if there is any
> reasonably conceivable state of facts that could provide a
> rational basis for the classification. Where there are
> "plausible reasons" for Congress' action, "our inquiry is at
> an end." This standard of review is a paradigm of judicial
> restraint.[35]

In addition, the burden is not on the state to show a rational basis, but rather lies with the challenger to prove that there is no rational basis.[36]

Here, Plaintiffs have not pled and cannot show that there is no rational basis for the Statutes. One rational basis could be the State's interest in protecting the ballot box from felons who continue to break the law by not abiding by enforceable court orders. Another basis could be that, in light of the overriding state policy promoting payment of

---

[33] *See Romer*, 517 U.S. at 631, 116 S.Ct. at 1627; *Collins*, 791 F.2d at 1261; *Barnes*, 711 F.2d at 27; *Trevino*, 575 F.2d at 1114.
[34] *See F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 313-14, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211 (1993).
[35] *Id.* (internal citations omitted).
[36] *See Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 367, 121 S.Ct. 955, 964, 148 L.Ed.2d 866 (2001).

child support obligations,[37] the State has an interest in protecting the ballot box from people who subvert this policy and neglect their own children. As to victims' restitution payments, the State has a legitimate interest in protecting the ballot box from people who refuse to complete the entire sentence for the crime of which they were convicted. In light of these rational and legitimate state interests, this Court should find that the Statutes do not violate the Equal Protection Clause of the United States Constitution, and dismiss Plaintiffs' Equal Protection claims.

## III. The Twenty-Fourth Amendment to the United States Constitution is Not Implicated by the Statutes.

In relevant part, the Twenty-Fourth Amendment to the United States Constitution states,

> [t]he right of citizens of the United States to vote in any primary or other election for President or Vice President, for electors for President or Vice President, or for Senator or Representative in Congress, shall not be denied or abridged by the United States or any State by reason of failure to pay any poll tax or other tax.

### A. Court-ordered child support obligations and victim's restitution payments are not taxes.

Black's Law Dictionary defines a tax as, "[a] monetary charge imposed by the government on persons, entities, transactions, or property to yield public revenue."[38] In *United States v. La Franca*, the United States Supreme Court stated, "[a] 'tax' is an enforced contribution to provide for the support of government[.]"[39] Each of these definitions has two common components relevant to this case that make a payment a tax:

---

[37] *See Berryhill v. Rhodes*, 21 S.W.3d 188, 192 (Tenn. 2000) (finding that Tennessee's child support laws indicate a public policy favoring payment of support so that children can become healthy, contributing members of society).
[38] Black's Law Dictionary (8th ed. 2004), tax.
[39] *See United States v. La Franca*, 282 U.S. 568, 572, 51 S.Ct. 278, 280, 75 L.Ed. 551 (1931).

it must be imposed by the government, and it must be paid to the government for use by the government.

Here, the payments in question are child support obligations and victims' restitution. Child support obligations are court-ordered obligations paid to the guardian of the child or children, not the government. Victims' restitution payments are court-ordered obligations paid to the victims of the crime for which the felon was convicted. Neither of these payments would qualify as a tax under the definitions above.

Both child support and victims' restitution, while arguably are payments imposed by the government,[40] are not collected for use by or the support of government. They are, rather, collected for use by private individuals. As such, it cannot be said that either child support obligations or victims' restitution obligations are taxes.[41] As a result, Plaintiffs' Twenty-Fourth Amendment claim should be dismissed.

> **B.      Even if this Court adopts the view that child-support obligations and victims' restitution obligations are taxes, Plaintiffs claim must fail because the payments are not a precondition to an otherwise qualified voter to vote, but rather a condition of applying to regain the right to vote.**

---

[40] It could be argued that both of these payments are not imposed by the government in the traditional sense that most taxes are imposed. They are not generally applicable payments imposed by statute, collected by the executive branches of federal or state government. They are, rather, imposed by a court, only in very select circumstances, and collected by the court.

[41] To the extent that an argument could be made that the Twenty-Fourth Amendment was intended to prevent states from requiring any sort of payment (not necessarily only taxes) prior to exercising the right to vote, that argument is unconvincing.

One of the primary canons of statutory construction is to give the words their plain meaning and to interpret the statute accordingly. The Twenty-Fourth Amendment was ratified in 1964. The United States Congress and the ratifying states chose to use the word "tax" and not "payment." In construing the amendment, this Court should assume that, in 1964, the drafters, Congress, and the ratifying states understood what a "tax" was and chose that word for a reason.

In addition, any attempt by Plaintiffs to use the language of *Harper v. Virginia State Board of Elections* (stating that "a State violates the Equal Protection Clause of the Fourteenth Amendment whenever it makes the affluence of the voter or payment of any fee an electoral standard") and its progeny should be rejected out of hand by this Court. 383 U.S. at 667, 86 S.Ct. at 1081. That language was specifically applicable to Equal Protection claims and not claims pursuant to the Twenty-Fourth Amendment.

While it is clear that the Twenty-Fourth Amendment applies only to taxes and that child support obligations and victims' restitution obligations are not taxes, Plaintiffs' claims pursuant to the Twenty-Fourth Amendment would fail even if this Court found that the two payments were taxes.

The Twenty-Fourth Amendment bars the State from abridging the "right of citizens…to vote…by reason of failure to pay any poll tax or other tax." Again, in interpreting statutes, courts look to the plain language first. The plain language of the Twenty-Fourth Amendment states that the "right of citizens…to vote" cannot hinge on the payment of a tax. This language presupposes that the right exists but for the payment of the tax.[42] This language also only applies to the right to vote.

Here, Plaintiffs are not claiming that they currently have the right to vote, nor are they claiming that the right was improperly taken away from them. In fact, the Statutes do not govern the right to vote at all. Instead, they govern the right to reapply for the right to vote. Because the Twenty-Fourth Amendment governs the right to vote, not the right to apply to have the right to vote restored, Plaintiffs' claims do not implicate the Twenty-Fourth Amendment. As a result, Plaintiffs' claim should be dismissed for this alternative reason.

**IV.     The Statutes Do Not Violate the Ex Post Facto Clauses of the United States or Tennessee Constitutions.**

Article 1, Section 11, of the Tennessee Constitution states, "[t]hat laws made for the punishment of acts committed previous to the existence of such laws, and by them only declared criminal, are contrary to the principles of a free Government; wherefore no

---

[42] *See Gray v. Johnson*, 234 F.Supp. 743 (S.D.Miss. 1964) (stating, "[i]t was the clear intention and purpose of the Twenty-Fourth Amendment to the Federal Constitution that neither the United States, nor any state **should impair the vested right of duly registered voter to vote** by reason of his failure to pay poll tax.") (emphasis added).

Ex post facto law shall be made." Article 1, Section 10, of the United States Constitution

states, in relevant part, "[n]o State shall…pass any…ex post facto Law[.]"

A.    **The Statutes are civil, non-punitive measures for the regulation of applications to have the right to vote restored.**

Before even examining whether a law violates the Ex Post Facto Clause, the court

must inquire whether the challenged law is criminal and intended to impose a

punishment, is civil but "so punitive either in purpose or effect as to negate [the State's]

intention to deem it civil[,]" or is merely a civil or regulatory law.[43] If the challenged law

is criminal or civil, but so punitive in purpose or effect as to negate the intention for it to

be civil, then the initial inquiry ends, and the court must engage in the two-step analysis

described below to determine whether the law is an ex post facto violation.[44] If, however,

the statute is merely civil and regulatory, then the inquiry ends and the challenged law is

upheld.[45]

Before analyzing the statutes at issue here, it is helpful to look to the United States

Supreme Court case of *Trop v. Dulles*, in which Court stated,

> The point [concerning differentiating punitive from civil
> laws] may be illustrated by the situation of an ordinary
> felon. A person who commits a bank robbery, for instance,
> loses his right to liberty and often his right to vote. If, in
> the exercise of the power to protect banks, both sanctions
> were imposed for the purpose of punishing bank robbers,
> the statutes authorizing both disabilities would be penal.
> But because the purpose of the latter statute is to designate
> a reasonable ground of eligibility for voting, this law is
> sustained as a nonpenal exercise of the power to regulate
> the franchise.[46]

---

[43] *Smith v. Doe*, 538 U.S. 84, 92, 123 S.Ct. 1140, 1146, 155 L.Ed.2d 164 (2003) (internal citations omitted).
[44] *See Id.*
[45] *See Id.*
[46] *Trop v. Dulles*, 356 U.S. 86, 96-97, 78 S.Ct. 590, 596, 2 L.Ed.2d 630 (1958).

Otherwise stated, the Supreme Court, when looking at disenfranchisement as a result of conviction of felony, found that the State's disenfranchisement of a felon is not a punitive measure, thus not violative of the Ex Post Facto Clause.

Here, the Statutes are neither criminal nor punitive. The matter before this Court is not even whether the enactment of felon disenfranchisement laws would violate the Ex Post Facto Clause (which the United States Supreme Court has already found to be within the law); but rather, whether two statutes setting requirements for felons to comply with prior to being eligible to apply for re-enfranchisement would violate the clause. If, as the Supreme Court stated in *Trop*, disenfranchising felons is not a punitive act, but rather a regulatory, civil act, then it must follow that setting qualifications for re-enfranchisement (which actually grants the felons more rights than they are entitled to) of those very same felons is also a regulatory civil act. Thus, Plaintiffs' Ex Post Facto Clause claim should be dismissed.

> **B.  Even if the Statutes were punitive, they do not apply to events occurring before their passage as they do not disadvantage Plaintiffs further by either altering the definition of the criminal conduct or increasing the punishment for the criminal conduct.**

Even if this Court were to find that the Statutes were punitive in nature, as a matter of law, the Statutes still do not violate the Ex Post Facto Clause, as they do not alter the definition of the crime or increase the punishment.

In deciding Ex Post Facto challenges to laws, both Tennessee and federal courts have established a two-step analysis. First, the law must be truly retroactive – the law must apply to events occurring before its enactment.[47] Second, it must disadvantage a citizen by either altering the definition of criminal conduct or increasing the punishment

---

[47] *See Lynce v. Mathis*, 519 U.S. 433, 441, 117 S.Ct. 891, 896, 137 L.Ed.2d 63 (1997); *State v. Ricci*, 914 S.W.2d 475, 480 (Tenn.1996); *Kaylor v. Bradley*, 912 S.W.2d 728, 732 (Tenn.Ct.App.1995).

for the criminal conduct.[48]  "The heart of the Ex Post Facto Clause, U.S. Const., Art. I, § 9, bars application of a law 'that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed[.]"[49]

Here, setting the qualifications for felon re-enfranchisement neither alters the definition of the crime nor increases the punishment for the crime.  The crime each of these Plaintiffs committed was a felony; neither of the challenged statutes alters the definition of a felony or of the specific crime each committed.  Each plaintiff received a punitive sentence for committing the crimes each was convicted of.  In addition to the punishment each received, each was also disenfranchised in an effort to protect the ballot and limit ballot access to non-felons (a constitutional exercise of the State's inherent authority to regulate the elective franchise).  Even if that were determined to be a punishment, it is not being changed or expanded by passage of the challenged statutes.  Prior to passage of the challenged statutes, Plaintiffs were disenfranchised for conviction of a felony.  After passage of the challenged statutes, Plaintiffs would still be disenfranchised for conviction of a felony.  The only thing the two challenged statutes change is the eligibility of Plaintiffs to regain the right of suffrage.  These eligibility requirements do not make Plaintiffs any more or less disenfranchised.  The result of the conviction of a felony is the same prior to and after passage of the Statutes.

For this reason, even if the Court found Tennessee's felon disenfranchisement laws to be punitive, the statutes at issue here would still not violate the Ex Post Facto Clauses of the United States and Tennessee Constitutions, and Plaintiffs' claim should be dismissed.

---

[48] *See Lynce*, 519 U.S. at 441, 117 S.Ct. at 896; *State v. Pearson*, 858 S.W.2d 879, 882 (Tenn.1993).
[49] *Johnson v. U.S.*, 529 U.S. 694, 699, 120 S.Ct. 1795, 1800, 146 L.Ed.2d 727 (2000)

V.    **Because Felons Do Not Have the Right to Vote, Regulation of the Elective Franchise in Relation to Felons Cannot Violate the Privileges and Immunities Clause.**

Plaintiffs' final count in the Complaint relevant to this Motion is: "State restrictions that deny the fundamental right to vote based upon failure to pay child support and/or restitution deny rights, privileges, immunities and the protections of equality afforded by the United States and Tennessee Constitutions."  Because felons do not have a fundamental right to vote (the flawed premise of the allegation), Plaintiffs are afforded no protection by the Privileges and Immunities Clause in relation to that right.

In *Oregon v. Mitchell*, Justice Douglas, concurring in part and dissenting in part, directly addressed the claim made by Plaintiffs.  He stated,

> While the right of qualified electors to cast their ballots and to have their votes counted was held to be a privilege of citizenship in *Ex parte Yarbrough* and *United States v. Classic*, these decisions were careful to observe that it remained with the States to determine the class of qualified voters.  It was federal law, acting on this state-defined class, which turned the right to vote into a privilege of national citizenship.  As the Court has consistently held, the Privileges and Immunities Clauses do not react on the mere status of citizenship to enfranchise any citizen whom an otherwise valid state law does not allow to vote.  Minors, felons, insane persons, and persons who have not satisfied residency requirements are among those citizens who are not allowed to vote in most States.[50]

In addition, the United States Supreme Court in *Minor v. Happersett* considered the question of whether a state law excluding women (who were otherwise citizens) from voting was constitutional pursuant to the Privileges and Immunities Clause.  The Court reasoned, "[i]f the right of suffrage is one of the necessary privileges of a citizen of the United States, then the constitution and laws of Missouri confining it to men are in

---

[50] *Oregon v. Mitchell*, 400 U.S. 112, 213-14, 91 S.Ct. 260, 310, 27 L.Ed.2d 272 (1970) (Justice Douglas, concurring in part, dissenting in part) (internal citations omitted).

violation of the Constitution of the United States, as amended, and consequently void."[51] The Court, however, held that, "the Constitution, when it conferred citizenship, did not necessarily confer the right of suffrage."[52] The Court explained that the right of suffrage was conferred by the State upon its citizens.[53] As a result, the Court held that the Privileges and Immunities Clause was not implicated in that case.

In addition, to this clear statement of the law as it relates to voting rights and the Privileges and Immunities Clause, the Sixth Circuit, citing Supreme Court precedent, has also held that "the Supreme Court has indicated that the Privileges and Immunities Clause of the Fourteenth Amendment affords no protection where Congress has imposed or authorized the infringement."[54]

Here, Plaintiffs are felons properly stripped of the right to vote. As such, the right to vote is not a privilege of citizenship that they enjoy. As a result, the Privileges and Immunities Clause affords Plaintiffs no protection in relation to their voting rights, and their claim should be dismissed.

---

[51] *Minor v. Happersett*, 88 U.S. 162, 170 (1874).
[52] *Id.* at 178.
[53] *Id.* at 171-73.
[54] *See Id.*

## CONCLUSION

For all of the forgoing reasons, Counts One through Five of the Complaint should be dismissed with prejudice.

Respectfully submitted,

ROBERT E. COOPER, JR.
Attorney General and Reporter

_____
WILLIAM N. HELOU (# 022839)
Assistant Attorney General
Special Litigation Division
425 5th Avenue North
Nashville, TN  37243
(615) 253-3327 - Telephone
(615) 741-2009 – Fax
william.helou@ag.tn.gov

# CERTIFICATE OF SERVICE

        This is to certify that I have served a copy of this memorandum of law by electronic means through the Court's filing system to the parties listed below:

Laughlin McDonald  
Nancy Abudu  
Neil Bradley  
American Civil Liberties Union Voting Rights Project  
2600 Marquis One Tower  
245 Peachtree Center Ave., NE  
Atlanta, GA  30303-1227

Tricia Herzfeld  
American Civil Liberties  
Union of Tennessee  
P.O. Box 120160  
Nashville, TN  37212

Sue B. Cain  
Allison Bussell  
108 Metropolitan Courthouse  
P.O. Box 196300  
Nashville, TN  37219

John L. Ryder  
Harris, Shelton, Hanover &  
Walsh, PLLC  
One Commerce Square  
Suite 2700  
Memphis, TN  38103-2225

Jerome C. Teel, Jr.  
Teel, McCormack & Maroney  
87 Murray Guard Drive  
Jackson, TN  38308-0668

James I. Pentecost  
Jon A. York  
106 Stonebridge Blvd.  
Jackson, TN  38305

Danny Presley  
Deputy County Attorney  
160 N. Main Street, Suite 660  
Memphis, TN  38103-1812

This, the 1$^{rst}$ day of August, 2008.

_____  
WILLIAM N. HELOU  
Assistant Attorney General

22