UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TERRENCE JOHNSON, JIM HARRIS, ALEXANDER FRIEDMAN, and JOSHUA ROBERTS<br><br>Plaintiffs,<br><br>vs.<br><br>PHIL BREDESEN, Governor of the State of Tennessee, BROOK THOMPSON, Coordinator of Elections, RILEY DARNELL, Secretary of State of Tennessee, JAMES JOHNSON, Administrator of Elections for Shelby County, KIM BUCKLEY, Administrator of Elections for Madison County, and RAY BARRETT, Administrator of Elections for Davidson County, in their official capacities,<br><br>Defendants. | Case No. 03-08-0187<br>The Honorable Thomas A. Wiseman, Jr., Presiding. |

## REPLY TO PLAINTIFFS' RESPONSE TO STATE DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Phil Bredesen, Brook Thompson, and Riley Darnell (collectively, "State Defendants") hereby file this Reply to Plaintiffs' Response to State Defendants' Motion for Judgment on the Pleadings (hereinafter, the "Motion").

**I.** **The Statutes at Issue Do Not Violate the Equal Protection Clause.**

    a.  **The challenged statues are subject to rational basis scrutiny and withstand such scrutiny.**

The United States Supreme Court has held that, "[i]n considering laws challenged under the Equal Protection Clause, this Court has evolved more than one test, depending on the interest affected or the classification involved."[1]

As stated in Defendants' Motion:

> If the interest affected involves a fundamental right or the classification discriminates against a suspect class, then a statute is subject to strict scrutiny, and only a compelling or substantial state interest will save it from being declared unconstitutional.[2] If neither the interest affected implicates a fundamental right nor the classification discriminates against a suspect class, then a statute is subject to a rational basis standard, which only requires a rational or legitimate state interest to be constitutionally sound.[3] Finally, if a statute does not implicate a fundamental right and does not, on its face, discriminate against a suspect class, but the statute does have a disparate impact on a suspect class and was enacted with animus toward that class, then the statute is subject to strict scrutiny.[4]

Plaintiffs do not attempt to, nor can they rebut these well settled Equal Protection principles. This Court should examine the challenged Statutes within this framework.

As State Defendants' Motion points out, in examining the Equal Protection claims before this Court, the Court must look to the nature of the right implicated and the classification of the people affected. As is clearly explained in the State Defendants' Motion and unrebutted by Plaintiffs, felons do not have a fundamental right to be re-enfranchised or to vote. In addition, as also explained in the Motion, felons are not a suspect class, people who have not paid their legal financial obligations (hereinafter, "LFO's") are not a suspect class, and the indigent are not a suspect class. Given that no

---

[1] *See Dunn v Blumstein*, 405 U.S. 330, 335, 92 S.Ct. 995, 999, 31 L.Ed.2d 274 (1972).
[2] *See Kadrmas v. Dickinson Public Schools*, 487 U.S. 450, 457, 108 S.Ct. 2481, 2487, 101 L.Ed.2d 399 (1988).
[3] *See Romer v. Evans*, 517 U.S. 620, 631, 116 S.Ct. 1620, 1627, 134 L.Ed.2d 855 (1996).
[4] *See Village of Arlington Heights v. Metropolitan Housing Authority*, 429 U.S 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977).

fundamental right is at issue and no suspect class is being disadvantaged, the challenged statutes are subject to Equal Protection analysis pursuant only to a rational basis test.

As further explained in the Motion, the rational basis test is very deferential to the State.[5] The United States Supreme Court held:

> a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. Where there are "plausible reasons" for Congress' action, "our inquiry is at an end. This standard of review is a paradigm of judicial restraint.[6]

In addition, **the burden is not on the State** to show a rational basis, but rather lies with the **challenger to prove that there is no rational basis**.[7]

While State Defendants, in their Motion, attempted to assert several possible rational bases, ones which easily withstand constitutional scrutiny, the test this Court should employ in analyzing the challenged statutes is whether "there is any reasonably conceivable state of facts that could provide a rational basis for the classification."[8] With that in mind, there is no doubt that the challenged statutes withstand the rational basis test.

Plaintiffs' Response does make an attempt to argue that the challenged statutes cannot survive rational basis review, but that attempt falls flat. In their Motion, Defendants point out that a rational basis for the challenged statutes could be that the State is attempting to protect the ballot box from people: who were stripped of their right

---

[5] *See F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 313-14, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211 (1993).
[6] *Id.* (internal citations omitted).
[7] *See Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 367, 121 S.Ct. 955, 964, 148 L.Ed.2d 866 (2001) (emphasis added).
[8] *See* note 6.

to vote for violating the law and are continuing to violate the law by not paying their LFO's; and who were stripped of the right to vote for violating the law and are now choosing to subvert the State's policy in favor of caring for their children by neglecting to pay court-ordered child support payments. Both of these provide a satisfactory set of facts that could provide a rational basis for enactment of the challenged statutes. Plaintiffs' attempt at showing that the State has other means of collecting LFO's is irrelevant.[9]

### b. Plaintiffs' cited cases in relation to the Equal Protection claims are all inapplicable.

#### i. Felons do not have a fundamental right to be re-enfranchised or to vote and no suspect class is being discriminated against.

Defendants agree with Plaintiffs that any abridgement of or obstacle to a qualified citizen's exercise of the right to vote is subject to strict scrutiny, as qualified citizens have a fundamental right to vote. Defendants also agree that any distinction in voting rights that discriminate against a suspect class must also survive strict scrutiny. Those propositions, however, has no bearing on this case as felons do not have the fundamental right to be re-enfranchised or to vote and no suspect class is being discriminated against.

Each and every case Plaintiffs cite in support of their Equal Protection arguments is significantly distinguishable and, as such, inapplicable to the issues before this Court. Each of Plaintiffs' cited cases involves one of two things that are not present here: either the fundamental right of qualified citizens to vote or discrimination against a suspect class.

---

[9] See Plaintiffs' Response at pages 15-18 (it is of note that, even in this section of their Response, Plaintiffs continue to refer to cases dealing with fundamental rights).

4

While Plaintiffs properly cite *Wesberry v. Sanders*, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964), *Reynolds v. Sims*, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), *Kramer v. Union Free Sch. No. 15*, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969), *Lubin v. Parish*, 415 U.S. 709, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974), *Dunn v. Blumstein*, 405 U.S. 330, 335, 92 S.Ct. 995, 999, 31 L.Ed.2d 274 (1972), *Bush v. Gore*, 531 U.S. 98, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000), *Burdick v. Takushi*, 504 U.S. 428, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992), and *Harper v. Virginia State Bd. Of Elections*, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966) for the proposition that the right to vote for **qualified citizens** is a fundamental right and any restrictions upon that right must be narrowly tailored to achieve a compelling government interest, none of those cases has any bearing or applicability to the issues before this Court. Here, there is no question that felons do not have a fundamental right to be re-enfranchised or to vote. Hence, the strict scrutiny standard utilized in all of the cases Plaintiffs cited has no applicability.

This same line of reasoning addresses the wholly irrelevant cases that Plaintiffs cite in relation to wealth based qualifications.[10] Those cases, dealing with issues ranging from access to courts to the right to marry to criminal liability in relation to child support, all hinge upon the presence of a fundamental right. The courts in those cases were merely announcing the rule that, in cases dealing with fundamental rights, wealth based classifications will not survive strict scrutiny analysis. Compare those cases with *Papasan v. Allain* (cited in State Defendants' Motion), in which the United States Supreme Court ruled that wealth classifications in relation to educational spending (a non-fundamental right) could survive Equal Protection analysis because they were not

---

[10] Plaintiffs' Response at pages 8-12.

subject to heightened scrutiny.[11] It is controlling Supreme Court precedent that wealth classifications can be upheld in relation to non-fundamental rights, such as the right of a felon to be re-enfranchised or to vote.

Plaintiffs also attempt to confuse the Court by claiming that State Defendants assert that the challenged statutes are not subject to any Equal Protection scrutiny under the United States Supreme Court case of *Richardson v. Ramirez*.[12] State Defendants do not make any such claim, in fact, stating the exact opposite in their Motion:

> The reasoning in *Ramirez*, read in conjunction with the holding in *Blumstien*, compel the conclusion that, while the right to vote is a fundamental right in the majority of cases arising form the denial of the elective franchise to a group of people, any denial to a group of people that was envisioned by the framers and embodied in the United States Constitution,[13] is not subject to any Equal Protection analysis.
>
> The analysis in relation to this case, however, cannot end here. The assertion that voting qualifications embodied in the United States Constitution are not subject to any scrutiny does not relieve a state from any Equal Protection analysis related thereto. The state would only be relieved of showing any state interest in relation to the exclusion of all members of a constitutionally envisioned group (such as all felons or citizens under the age of 18). If, however, the state were to create a class of individuals by excluding some but not all members of an envisioned group, then the state would have to show an interest

---

[11] 478 U.S. 265, 283-84, 106 S.Ct. 2932, 2943, 92 L.Ed.2d 209 (1986) (holding that wealth classification in relation to educational spending was not subject to heightened scrutiny).

[12] Plaintiffs' Response at page 7 (stating: "Defendants' argument that Tennessee's restoration of voting rights to people convicted of infamous crimes does not require any constitutional safeguards runs directly counter to *Richardson*, and *Hunter*, as well as *Hobson*.").

[13] An example of another such qualification is the age requirement. That the Twenty-Sixth Amendment to the United States Constitution requires states to allow all otherwise qualified individuals over the age of eighteen to vote is a tacit recognition that states may bar all those under the age of eighteen. *See* U.S. Const. amend. XXVI. This does not bar the states from distributing the franchise to individuals less than eighteen years of age; it only means that any decision by the states not to do so would not be subject to any level of scrutiny per the reasoning in *Ramirez*. *See Ramirez*, 418 U.S. at 24, 94 S.Ct. at 2655.

6

> justifying the different treatment - the level of the state
> interest, again, would depend upon the classification.[14]

It is important to note that here, the Court is not considering selective felon disenfranchisement, but rather, the Court is considering a case in which all felons have been constitutionally disenfranchised and are now seeking restoration of the right to vote. There is no question that the State, through the challenged statutes, is treating different felons differently in relation to re-enfranchisement. These felons, again, however, possess neither a fundamental right to vote (it was constitutionally stripped from them) nor a fundamental right to be re-enfranchised, and hence, any differing treatment that does not discriminate against a suspect class would only be subject to a rational basis analysis.

> **ii. Plaintiffs' arguement that all felon disenfranchisement is subject to strict scrutiny is misplaced, as the cases they cite dealt with suspect classes, discrimination against whom would be subject to strict scrutiny.**

Plaintiffs cite to *Hunter v. Underwood*, 471 U.S. 222, 105 S.Ct. 1916, 85 L.Ed.2d 222 (1985), and *Hobson v. Pow*, 434 F.Supp. 362 (N.D. Ala. 1977) for the proposition that felon disenfranchisement is subject to strict scrutiny. Plaintiffs' reliance on these cases is, at best, misleading.

In *Hunter v. Underwood*, the court found that Alabama's disenfranchisement scheme was enacted to discriminate against African-Americans and had a disproportionate affect upon African-Americans.[15] As a result, the Court struck down the disenfranchisement statute. That case has no application here. Here, Plaintiffs do not claim that the statutes were enacted with animus toward a suspect class, nor do Plaintiffs

---

[14] State Defendants' Motion for Judgment on the Pleadings at pages 9-10.
[15] *Hunter*, 471 U.S. at 229.

claim that the Statutes have disproportionately affected a suspect class (as explained in State Defendants motion, the United States Supreme Court has ruled that the indigent are not a suspect class). As a result, strict scrutiny is improper here.

*Hobson v. Pow* presented the situation in which an Alabama district court held that an Alabama law disenfranchising men but not women for spousal abuse was unconstitutional.[16] *Hobson* is also inapplicable here. First, *Hobson* involved selective felon disenfranchisement not complete disenfranchisement (as Tennessee has adopted) - in their response, Plaintiffs seem to consistently forget or gloss over the fact that the Tennessee constitutionally disenfranchises all felons; the challenged statutes only concern eligibility for re-enfranchisement.[17] Second, from the court's opinion, it is clear that the issues before the Alabama court were quite different from the issue here:

> This case does not question "whether a State may constitutionally exclude some or all convicted felons from the franchise." *Richardson v. Ramirez, supra.* Instead, it questions whether the state may exclude people from the franchise by treating one sex differently from the other. *Reed v. Reed, supra*. Nor does the Alabama constitution establish this gender-based classification in an attempt to provide for special problems of women or men. *Schlesinger v. Ballard*, 419 U.S. 498, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975). No compelling, or even rational, state policy has been suggested to explain why conviction of men for assault and battery against the spouse is a cause for disqualification while the conviction of women for the same offense is not disqualifying.[18]

Plaintiffs recognize the weakness of their argument after discussing these two cases when they state, "[d]isenfranchising only African Americans or men, or limiting restoration of voting rights to Caucasians or women, would plainly violate the

---

[16] *Hobson*, 434 F.Supp. at 1970-71.
[17] *Id*. at 1970.
[18] *Id*. at 366-67.

constitution."[19] Plaintiffs' own example uses suspect classes, a fact that does not exist here. That is why the very next statement in Plaintiffs' Response, "[b]y the same token, limiting restoration to ex-felons based on their economic status should similarly be found unconstitutional" is incorrect; ex-felons and the indigent are not suspect classes.

### iii. Plaintiffs concede that they do not allege discriminatory intent, which is fatal to any disparate impact claim they could make.

In their response, Plaintiffs concede that they do not allege discriminatory intent on the part of the Tennessee General Assembly.[20] They then make the argument that the cases they relied upon above "make it abundantly clear that when a state law burdens a fundamental right, such as the right to vote, a plaintiff need not show the law was enacted with a discriminatory purpose."[21]

First, State Defendants agree with Plaintiffs' quoted statement of law (with the caveat that, if the government can show a compelling interest when burdening the fundamental right, the statute may pass constitutional muster). Plaintiffs, however, are confusing two separate issues here.

In their Motion, State Defendants assert that, if Plaintiffs are attempting to make a disparate impact claim under the Equal Protection Clause, the standard that must be satisfied is that the State enacted the statutes with animus toward a suspect class and the statutes must have a disparate impact on that suspect class.[22] Plaintiffs' citation to the dissents in *Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) and *Harper v. Virginia State Bd. Of Elections*, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966),

---

[19] Plaintiffs' Response at page 7-8.
[20] Plaintiffs' Response at page 12.
[21] *Id*. at 12-13.
[22] State Defendants' Motion for Judgment on the Pleadings at page 11 (citing *Village of Arlington Heights v. Metropolitan Housing Authority*, 429 U.S. 252 97 S.Ct. 555, 50 L.Ed.2d 450 (1977)).

both of which were decided prior to *Arlington Heights*, do not alter the controlling Supreme Court precedent as to the correct standard. Now that Plaintiffs have conceded that they are not alleging any discriminatory purpose or animus on behalf of the Tennessee General Assembly in relation to the challenged statutes, any disparate impact claim under the Equal Protection Clause must fail.

Second, Plaintiffs statement, "that when a state law burdens a fundamental right, such as the right to vote, a plaintiff need not show the law was enacted with a discriminatory purpose" assumes that a fundamental right is being burdened. As was discussed at length in the State Defendants' Motion and summarized here, felons who have been constitutionally stripped of the right to vote do not have a fundamental right to be re-enfranchised or vote. Thus, Plaintiffs' statement of law is irrelevant to this case.

## II. The Challenged Statutes Do Not Violate the 24th Amendment.

The 24th Amendment states:

> The right of citizens of the United States to vote in any primary or other election for President or Vice President, for electors for President or Vice President, or for Senator or Representative in Congress, shall not be denied or abridged by the United States or any State by reason of failure to pay any poll tax or other tax.

The two key elements of the 24th Amendment relevant to this discussion are "[t]he right…to vote" and "failure to pay any poll tax or other tax." Plaintiffs' argument ignores both of those elements completely.

### a. LFO's are not taxes.

Plaintiffs argue in their Response that the challenged statutes violate the 24th Amendment because requiring payment of LFO's is "equivalent to a poll tax."[23] In making this argument, Plaintiffs ignore the plain language of the 24th Amendment.

The most basic canon of statutory construction is that courts should first look to the plain language of the statute. The plain language of the 24th Amendment clearly states that it only applies to taxes (either poll taxes or other taxes), not payments that may be termed "equivalent to taxes".

In addition to being appalling, the assertion that child support payments and victims' restitution are taxes is completely unfounded in the law. They are not "monetary charge[s] imposed by the government on persons, entities, transactions, or property **to yield public revenue**."[24] Nor are they "enforced contribution[s] to provide for the support of government[.]"[25]

The cases cited by Plaintiffs in relation to poll taxes, all involve the payment of money **to the government** for the right to enter the poll and cast a vote (whether that payment comes in the form of a payment at the poll or a payment to the government to get id so that one can go to the poll).[26]

### b. The payment of LFO's does not involve the right of an otherwise qualified voter to enter the polling place and cast a vote.

The second element of the 24th Amendment is that the State shall not deprive a citizen of "the right…to vote". This language presupposes that the right to vote exsists but for the payment of a tax. Here, felons do not have the right to vote. This case does

---

[23] Plaintiffs' Response at page 18.
[24] Black's Law Dictionary (8th ed. 2004), tax.
[25] *See United States v. La Franca*, 282 U.S. 568, 572, 51 S.Ct. 278, 280, 75 L.Ed. 551 (1931).
[26] Plaintiffs' Response at pages 18-21.

not involve the right to vote, but rather, the eligibility of felons who were constitutionally stripped of the right to vote to re-register. Again, the plain language of the 24th Amendment precludes its application to this case.

### III. The Challenged Statutes Do Not Violate the Ex Post Facto Clauses of the United States or Tennessee Constitution.

Even if, as Plaintiffs assert, that the Tennessee laws disenfranchising felons are punitive in nature, the challenged statutes do not violate the Ex Post Facto Clause. As stated in Defendants' Motion:

> In deciding Ex Post Facto challenges to laws, both Tennessee and federal courts have established a two step analysis. First, the law must be truly retroactive - the law must apply to events occurring before its enactment.[27] Second, it must disadvantage a citizen by either altering the definition of criminal conduct or increasing the punishment for the criminal conduct.[28] "The heart of the Ex Post Facto Clause, U.S. Const., Art. I, § 9, bars application of a law 'that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed[.]"[29]
>
> Here, setting the qualifications for felon re-enfranchisement neither alters the definition of the crime nor increases the punishment for the crime. The crime each of these Plaintiffs committed was a felony; neither of the challenged statutes alters the definition of a felony or of the specific crime each committed. Each plaintiff received a punitive sentence for committing the crimes each was convicted of. In addition to the punishment each received, each was also disenfranchised in an effort to protect the ballot and limit ballot access to non-felons (a constitutional exercise of the State's inherent authority to regulate the elective franchise). Even if that were determined to be a punishment, it is not being changed or expanded by passage of the challenged statutes. Prior to passage of the challenged statutes, Plaintiffs were disenfranchised for

---

[27] *See Lynce v. Mathis*, 519 U.S. 433, 441, 117 S.Ct. 891, 896, 137 L.Ed.2d 63 (1997); *State v. Ricci*, 914 S.W.2d 475, 480 (Tenn.1996); *Kaylor v. Bradley*, 912 S.W.2d 728, 732 (Tenn.Ct.App.1995).
[28] *See Lynce*, 519 U.S. at 441, 117 S.Ct. at 896; *State v. Pearson*, 858 S.W.2d 879, 882 (Tenn.1993).
[29] *Johnson v. U.S.*, 529 U.S. 694, 699, 120 S.Ct. 1795, 1800, 146 L.Ed.2d 727 (2000)

12

> conviction of a felony. After passage of the challenged
> statutes, Plaintiffs would still be disenfranchised for
> conviction of a felony. The only thing the two challenged
> statutes change is the eligibility of Plaintiffs to regain the
> right of suffrage. These eligibility requirements do not
> make Plaintiffs any more or less disenfranchised. The
> result of the conviction of a felony is the same prior to and
> after passage of the Statutes.[30]

Plaintiffs' argument that because felons would have been entitled to re-enfranchisement under the old law without paying LFO's,[31] the challenged statutes retroactively increase their punishment is unconvincing. The punishment (if it is, in fact, penal) is disenfranchisement. That punishment has not changed at all; the statutes do not disenfranchise felons any more or less than before. Re-enfranchisement is the process by which a felon can regain a right or overcome the punishment inflicted. That is the only affected aspect of the law in relation to the challenged statutes.

### IV. The Challenged Statutes Do Not Violate the Privileges and Immunities Clause of the Tennessee Constitution.[32]

Plaintiffs' claim that the Priviliges and Immunities Clause of the Tennessee Constitution ensures the same protections as the Equal Protection Clause.[33] Without commenting on the soundness of this interpretation, State Defendants need only point to the arguments and case law in their Motion, as well as above, which clearly demonstrate that the challenged statutes do not violate the Equal Protection Clause.

In addition, Plaintiffs offer no argument to State Defendants' argument as to the Privileges and Immunities Clause of the United States Constitution.

---

[30] Defendants' Motion for Judgment on the Pleadings at pages 17-18.
[31] This is an argument that Plaintiffs do not support with any citation to law.
[32] Plaintiffs seem to have abandoned any claim under the Privileges and Immunities Clause of the United States Constitution.
[33] This is a claim that makes the Privileges and Immunities Clause count of the complaint redundant to the Equal Protection counts.

13

## CONCLUSION

For almost a century, when examining the right to vote, courts have uniformly called it a fundamental right, requiring all intrusions upon that right to be supported by a compelling state interest. In this case, however, it is clear that felons do not possess a fundamental right to re-enfranchisement or to vote. One must divorce the natural connection between voting rights being fundamental (which they are for qualified citizens) and follow the precedent set by the United States Supreme Court.

Like any other non-fundamental right, the State is only held to a rational basis standard, requiring no conceivable set of facts that could support the differing treatment or classification. Here, there are obviously conceivable sets of facts that support the differing treatment.

For that reason, the reasons stated above, and the reasons in the original motion, Counts One through Five of the Complaint should be dismissed.

Respectfully submitted,

ROBERT E. COOPER, JR.
Attorney General and Reporter


/s William Helou
WILLIAM N. HELOU (# 022839)
Assistant Attorney General
Special Litigation Division
425 5th Avenue North
Nashville, TN 37243
(615) 253-3327 - Telephone
(615) 741-2009 – Fax

**CERTIFICATE OF SERVICE**

        This is to certify that I have served a copy of this reply by electronic means through the Court's filing system to the parties listed below:

Laughlin McDonald
Nancy Abudu
Neil Bradley
American Civil Liberties Union Voting Rights Project
2600 Marquis One Tower
245 Peachtree Center Ave., NE
Atlanta, GA 30303-1227

Tricia Herzfeld
American Civil Liberties Union of Tennessee
P.O. Box 120160
Nashville, TN 37212

Sue B. Cain
Allison Bussell
108 Metropolitan Courthouse
P.O. Box 196300
Nashville, TN 37219

John L. Ryder
Harris, Shelton, Hanover & Walsh, PLLC
One Commerce Square
Suite 2700
Memphis, TN 38103-2225

Jerome C. Teel, Jr.
Teel, McCormack & Maroney
87 Murray Guard Drive
Jackson, TN 38308-0668

James I. Pentecost
Jon A. York
106 Stonebridge Blvd.
Jackson, TN 38305

Danny Presley
Deputy County Attorney
160 N. Main Street, Suite 660
Memphis, TN 38103-1812

This, the 25th day of August, 2008.

        /s William Helou
        WILLIAM N. HELOU
        Assistant Attorney General