UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| TERRENCE JOHNSON, JIM HARRIS, ALEXANDER FRIEDMANN, and JOSHUA ROBERTS | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 03-08-0187 |
| vs. | ) ) ) | Hon. Thomas A. Wiseman, Jr. U.S. District Court Judge |
| PHIL BREDESEN, Governor of the State Tennessee, BROOK THOMPSON, Coordinator of Elections, RILEY DARNELL, Secretary of State of Tennessee, JAMES JOHNSON, Administrator of Elections for Shelby County, KIM BUCKLEY, Administrator of Elections for Madison County, and RAY BARRETT, Administrator of Elections for Davidson County, in their official capacities, | ) ) ) ) ) ) ) ) ) ) ) ) ) | Hon. Juliet Griffin U.S. Magistrate Judge |
| Defendants. | ) ) | |

**REPLY TO STATE DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR JUDGMENT ON THE PLEADINGS OR IN THE
<u>ALTERNATIVE MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

Plaintiffs, by and through counsel, hereby file this Reply to the State Defendants' (hereinafter referred to as "Defendants") Response to Plaintiffs' Motion for Judgment on the Pleadings or in the alternative Motion for Partial Summary Judgment. Defendants concede that Tennessee's felon re-enfranchisement scheme treats people convicted of infamous crimes differently based on their economic status. Defs.' Reply to Pls.' Resp.

in Opp'n Mot. Judgment on Pleadings at 7.[1] Plaintiffs maintain that, for all of the reasons set forth in the memorandum in support of their motion and the reasons below, Tennessee's disparate treatment of people with felony convictions who lack the financial means to satisfy the legal financial obligations (LFO) requirement is unconstitutional.

**I.   TENNESSEE'S RE-ENFRANCHISEMENT SCHEME, WHICH TREATS PEOPLE WITH FELONY CONVICTIONS DIFFERENTLY BASED ON THEIR ECONOMIC STATUS, VIOLATES THE EQUAL PROTECTION CLAUSE.**

**A.   Plaintiffs Have Articulated The Proper Framework For Analyzing Their Equal Protection Claim And, Under That Framework, Tennessee's Felon Re-enfranchisement Scheme Is Unconstitutional.**

Defendants argue that the standard Plaintiffs have presented for purposes of analyzing their equal protection claim goes against settled equal protection principles. Defs.' Reply at 2. Plaintiffs correctly rely upon the Supreme Court's rulings in Burdick v. Takushi, 504 U.S. 428 (1992), and Anderson v. Celebrezze, 460 U.S. 780 (1983), both of which involved the issue of voting and implicated the equal protection clause. For election and voting issues, Burdick raised the level of the traditional Fourteenth Amendment analysis. Unlike other areas where some state actions may survive based on a rational basis test, under Burdick, restrictions on voters must at a minimum be both "reasonable" and "nondiscriminatory." 504 U.S. at 434. Defendants cite to the standard set forth in Village of Arlington Heights v. Metropolitan Hous. Auth., 429 U.S. 252 (1977), without acknowledging that the rulings in Burdick and Celebrezze came after Arlington Heights and that the standard set forth in Burdick and Celebreeze remains good law. Thus, it is the benchmark set in those two cases which this Court should follow.

---

[1] Defendants incorporated by reference all of the arguments in their Reply to Plaintiffs' Response in Opposition to Defendants' Motion for Judgment on the Pleadings. See Docket No. 71.

2

Defendants also assert that Plaintiffs bear the burden of negating the state's purported interests in treating felons differently based on their income. Defs.' Reply at 3. Plaintiffs do not dispute that they carry this burden and have presented several reasons why the state's LFO requirement is not narrowly tailored to serve a compelling governmental interest. Further, even assuming a lesser standard applies, the requirement is discriminatory, as Defendants acknowledge, and it is not rationally related to the government's purported interests in linking the collection of LFOs to the restoration of the fundamental right to vote. Pls.' Mem. in Supp. Mot. Judgment on Pleadings Or In The Alternative Partial Summary Judgment at 15-17. Furthermore, as alleged in the amended complaint, both Plaintiffs Johnson and Harris had custody of their children and were providing for those children even though they owed outstanding child support payments. Amend. Compl. at ¶¶ 2-3. Thus, Plaintiffs' actions clearly undercut any asserted interests Defendants propound and could actually diminish rather than enhance parental involvement in political issues which directly affect their children's lives.

### B. The Cases Upon Which Plaintiffs Rely Establish That Wealth Discrimination In The Context Of Voting Is Unconstitutional.

Defendants contend that the cases to which Plaintiffs cite are inapplicable on the grounds that those cases involve a fundamental right and Plaintiffs do not have a fundamental right to vote. Defs.' Reply at 4-7. As Plaintiffs already have asserted, Tennessee's re-enfranchisement scheme restores the right to vote, voting is a fundamental right, and the state may not restore a fundamental right in a constitutionally infirm manner. Pls.' Mem. at 5-8.

Based on Defendants' reasoning, a re-enfranchisement scheme which restored voting rights to people convicted of infamous crimes provided that those persons were

white or male would be constitutional even though the Supreme Court's decision in cases like Hunter v. Underwood, 471 U.S. 222 (1985), and the decision in Hobson v. Pow, 434 F. Supp. 362 (N.D. Ala. 1977), clearly stand for the opposite conclusion.  Plaintiffs do not ask this Court to ignore the fact that Tennessee may disfranchise people with felony convictions.  Instead, Plaintiffs ask this Court to recognize that, once Tennessee enacts a voting rights restoration scheme, the qualifications it sets forth for restoration of that right must comport with constitutional safeguards.  When it comes to re-enfranchisement, a person's criminal conviction cannot be used to support a discriminatory scheme and Plaintiffs properly rely upon cases like Wesberry v. Sanders, 376 U.S. 1 (1964), Reynolds v. Sims, 377 U.S. 533 (1964), and Harper v. Virginia State Bd. of Elections, 383 U.S. 663 (1966) for that proposition.  Defendants' attempts to minimize the significance of the state's LFO requirement, even though it directly applies to voting qualifications, is what "falls flat."  Defs.' Reply at 3.

Defendants also maintain that poor people are not a suspect class and, therefore, wealth based qualifications are not subject to heightened scrutiny.  Id. at 5-6.  In support of this argument, Defendants rely upon the decision in Papasan v. Allain, 106 S. Ct. 2932, 2943 (1986).  Papasan involved a group of local school officials and school children from the Chickasaw Indian Nation who challenged the funding disparities in the legislature's appropriations to schools around the state.  106 S. Ct. 2932.  Although the Court determined that the right to education "is not among the rights afforded explicit protection under our Federal Constitution," the Court recognized "the possibility 'that some identifiable quantum of education is a constitutional protected prerequisite to the meaningful exercise of either [the right to speak or the right to vote].'"  Id. at 2943

4

(internal citations omitted). The Court ultimately vacated the court of appeals' dismissal of the plaintiffs' equal protection claim and remanded the case for further proceedings to determine whether there was a rational basis for the funding disparity. Id. at 2947. Thus, even in Papasan, the Court affirms that certain preconditions related to exercising a fundamental right may be subject to constitutional scrutiny as well. The instant case is even stronger than the issue addressed in Papasan. In restoring the fundamental right to vote, the qualifications necessary for getting that right restored should be subject to constitutional scrutiny.

Defendants also reassert the state's reasons for enforcing the LFO requirement. Defs.' Reply at 3-4. Plaintiffs maintain that the relationship between the LFO requirement and the state's purported interests is tenuous at best. Defendants fail to address the fact that people who owe outstanding child support are treated differently. If the state were really concerned with advancing their purported interests, especially in the area of child support, the prohibition would apply across the board, i.e. all people who owe outstanding child support would not be qualified to vote until they were current on their payments. Defendants' reasons for enforcing the LFO requirement suggest that a child whose parent is not current on child support, but does not have a felony conviction, is less deserving of additional protection than a child whose parent is in the same situation, but who has a criminal conviction. Such reasoning is clearly flawed and underscores the tenuous relationship between the LFO requirement and the government's asserted interests.

5

### C. In The Context Of Voting, Plaintiffs Need Not Allege Discriminatory Intent In Order To Sustain Their Equal Protection Claim.

As Plaintiffs articulated in their memorandum, there are numerous cases involving the issue of voting rights and equal protection in which the plaintiffs were successful in their challenges and the Supreme Court not only did not require them to prove intent, but specifically held that "intent" was not a necessary element for establishing an equal protection violation in the context of voting. Pls.' Mem. at 12-15. The Court's decision in Arlington Heights did not render the decisions in Baker v. Carr, 369 U.S. 186, and Harper, null and void and, notably, these cases remain good law. Thus, Plaintiffs are not required to show discriminatory intent on the legislature's part in order to establish an equal protection violation. Burdick, 504 U.S. 428.

## II. TENNESEE'S LFO REQUIREMENT IS THE TYPE OF "OTHER TAX" CONGRESS HAD IN MIND WHEN ENACTING THE TWENTY-FOURTH AMENDMENT.

The legislative history and case law interpreting the Twenty-Fourth Amendment establish that the term "other tax" pertains to financial barriers which a state erects as a pre-condition to being able to vote. Pls.' Mem. at 17-20. Congress sought to eliminate wealth as a factor in voting in passing the Twenty-Fourth Amendment and Tennessee's LFO requirement violates both the letter and spirit of the law.

Defendants argue that the restitution and child support payments do not go to the state and, therefore, the cases upon which Plaintiffs rely are inapplicable. Defs.' Reply at 11. As an initial matter, Plaintiffs note that families enrolled in Tennessee's Families First program or that receive TennCare or Medicaid must pay some or all of the child

6
Case 3:08-cv-00187   Document 72   Filed 09/02/08   Page 6 of 10 PageID #: 374

support they receive to the state.[2]  The collection of such funds does go to the state's coffers.  Thus, to the extent that payment to the state is a factor, that scenario would definitely apply to some of the individuals affected by the LFO requirement.

Moreover, even assuming that the restitution and child support payments did not go to the state, this point would render the state's asserted interests in maintaining the law even more dubious.  The history of voting rights in America includes a long fought battle to eliminate an earlier requirement that in order to be qualified to vote a voter must own land.  Although land may not be considered a "tax" in the traditional sense, it is nevertheless a wealth indicator.  Defendants' argument should fail because the bottom line is that, because Plaintiffs lack the financial means to satisfy the LFO requirement they cannot vote.  This is the type of barrier this country intended to abolish in passing the Twenty-Fourth Amendment which is why Tennessee's LFO requirement is unconstitutional.

### III. TENNESSEE'S ENFORCEMENT OF THE LFO REQUIREMENT AGAINST PLAINTIFFS INCREASES THE PUNISHMENT FOR THEIR CRIMES AND, THEREFORE, VIOLATES THE EX POST FACTO CLAUSE.

Defendants argue that because Tennessee's law denied voting rights to people convicted of infamous crimes prior to passage of Tenn. Code Ann. §§ 40-29-202(b) and (c), Plaintiffs are no worse off than they would have been before passage of these statutes.  For all of the reasons Plaintiffs presented in their memorandum, Defendants'

---

[2]  See Tennessee's Child Support Handbook available at http://www.state.tn.us/humanserv/cs/cs_handbook.pdf.  The manual provides that, for those families participating in the Families First program, the recipient assigns their rights "to receive child support to the state to pay back the state and federal governmental for the benefits [the recipient] get[s] under the Families First program."  See also 42 U.S.C. § 608(a)(3) (requiring that "a member of the family assign to the State any rights the family member may have . . . to support from any other person").

interpretation of the ex post facto clause and the Tennessee Supreme Court's holding in May v. Carlton, 245 S.W.3d 340 (Tenn. 2008) are seriously flawed. Plaintiffs are definitely worse off after passage of the LFO requirement because, prior to the 2006 law, they were eligible to get their voting rights restored. Now, they cannot. Defendants do not dispute this fact and cannot skirt the issue by focusing solely on Plaintiffs' conviction without factoring in the additional barriers the state has erected.

## IV. TENNESSEE'S LFO REQUIREMENT VIOLATES THE PRIVILEGES AND IMMUNITIES CLAUSES OF THE UNITED STATES AND TENNESSEE CONSTITUTIONS.

Given that Defendants do not present any arguments in their response to counter Plaintiffs' privileges and immunities claims, Plaintiffs respectfully direct this Court to the arguments presented in their memorandum. Pls.' Mem. at 21-22. Plaintiffs note, however, that as indicated in their heading and the body of this section of their brief, they clearly have not abandoned a claim under the federal privileges and immunities clause as Defendants incorrectly assert. Defs.' Reply at n.32.

## V. CONCLUSION

Defendants concede that Tennessee's re-enfranchisement scheme creates a system whereby people convicted of infamous crimes, but who are more affluent, get their voting rights restored sooner than those who cannot afford to do so. Plaintiffs maintain that this classification does not serve any compelling governmental interest and that Plaintiffs' own actions while owing LFOs undercuts Defendants' purported interests in maintaining such a scheme. There are numerous means available to Defendants to collect LFOs and, as stated earlier, the fact that the child support payment requirement does not apply to everyone who has outstanding child support further underscores that the state's asserted

8
Case 3:08-cv-00187   Document 72   Filed 09/02/08   Page 8 of 10 PageID #: 376

interests cannot be met in any meaningful way when a significant number of parents who have outstanding child support are not affected by the prohibition.

Plaintiffs have served time in prison, finished their parole, and satisfied their probation requirements. They are Tennessee citizens who care about their communities and their country, and all they want to do is be fully reintegrated into society and play a role in making their communities better. Plaintiffs ask this Court to recognize their right to be treated equally and allow them to vote despite their economic status.

Dated this 2nd day of September, 2008.

Respectfully submitted,

/s Nancy Abudu
Nancy G. Abudu*
Laughlin McDonald*
Neil Bradley*
AMERICAN CIVIL LIBERTIES UNION
 VOTING RIGHTS PROJECT
230 Peachtree Street NW
Suite 1440
Atlanta, Georgia 30303
Tel: (404) 523-2721
Fax: (404) 653-0331
nabudu@aclu.org
lmcdonald@aclu.org
nbradley@aclu.org
*Admitted pro hac vice

Tricia Herzfeld (Bar No. 026014)
AMERICAN CIVIL LIBERTIES UNION
 OF TENNESSEE
P.O. Box 120160
Nashville, Tennessee 37212
Tel: (615) 320-7143
Fax: (615) 320-7260
tricia@aclu-tn.org

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of September, 2008, a copy of the foregoing was served on counsel of record for defendants, addressed as follows, via the court's electronic filing system:

ROBERT E. COOPER, JR.
JANET M. KLEINFELTER
WILLIAM N. HELOU
Special Litigation Division
425 5th Avenue North
Nashville, Tennessee 37243

SUE B.CAIN
ALLISON BUSSELL
108 Metropolitan Courthouse
P.O. Box 196300
Nashville, Tennessee 37219

JOHN L. RYDER
One Commerce Square, Suite 2700
Memphis, Tennessee 38103

DANIEL PRESLEY
160 North Main Street, Suite 2700
Memphis, Tennessee 38103

JAMES I. PENTECOST
JON A. YORK
106 Stonebridge Blvd.
Jackson, TN 38305

/s Nancy Abudu_____
Nancy Abudu